**MUTUAL LIFE INS. CO. OF NEW YORK v. DAIGLE.**

**DAIGLE v. MUTUAL LIFE INS. CO OF NEW YORK.**

No. 10935.

Circuit Court of Appeals, Fifth Circuit.

May 23, 1944.

Rehearing Denied June 26, 1944.

Richard B. Montgomery, Jr., of New Orleans, La., for Mut. Life Ins. Co. of N. Y.

Edward Dubuisson, of Opelousas, La., for Daigle.

Before SIBLEY, McCORD, and LEE, Circuit Judges.

LEE, Circuit Judge.

This is a suit by Etienne Daigle against the Mutual Life Insurance Company of New York to recover monthly disability benefits alleged to be due under a life insurance policy issued to him by the insurer on April 3, 1924, and to recover the statutory penalty and attorney's fees under Act No. 310 of the Legislature of Louisiana for the year 1910 for the alleged unwarranted delay in paying such benefits. The insurer denied that disability benefits were due on the ground that the plaintiff was not totally and permanently disabled, within the terms of the policy, from engaging in any gainful occupation, and denied liability for the statutory penalty and attorney's fees for the further reason that it had just and reasonable grounds to excuse its delay in making the benefit payments.

The case was brought in the District Court for the Parish of St. Landry, Louis-iana, and was removed by the defendant to the Federal Court, where it was tried to a jury. The verdict was "for plaintiff with penalties and attorney's fees at $2500." A timely motion to set aside the verdict, or in the alternative for a new trial, was overruled, after plaintiff, following a suggestion by the Court, entered a remittitur for $1,000, thereby reducing the attorney's fees from $2500 to $1500. From the judgment entered on the verdict as modified by the remittitur defendant has appealed, and plaintiff has cross-appealed, asking that the attorney's fees be increased to $2500, the amount fixed by the jury.

The policy provided: "If the insured, * * * shall furnish due proof to the Company at its home office * * * (a) that he has become totally and permanently disabled by bodily injury or disability so that he is or will be permanently, continuously, and wholly prevented thereby from performing any work for compensation, gain or profit, or from following any gainful occupation," the Company would pay the sum of $50 per month and waive the premiums as they fell due. In the event the insured remained totally disabled for more than five years, said benefits would increase to $75 per month; and if disability continued after ten years, said benefits would increase to $100 per month.

The insured was engaged at the time he took out the policy in farming, and had been so engaged all of his life. He was industrious, frugal, and of good business judgment, and had acquired over a period of years considerable property consisting mainly of real estate and cattle. He testified that in one year he grossed some $90,-000 from his farming operations. In June of 1930, insured was stricken with an affection of the nervous system resulting in what is called torticollis, or a stiff and twisted neck. The disease rendered him helpless to perform the manifold duties of his farm, and he found himself no longer able to follow that occupation though he did for a while try to do so. In October of 1930 he made proof of total and permanent disability. This proof was accepted and the Company paid the monthly benefits to insured through July 1, 1942, when it stopped all further payments on the ground that the insured was not totally disabled within the terms and provisions of the policy.

The appellant admitted that Daigle was unable to follow the occupation or

business that he was following when the policy was taken out. The issue it raised below, as stated in appellant's brief, was whether "a man who can start a new business after he has obviously become disabled and build it to a point where he nets, exclusive of a place to live and all of his meals, more than $175 a month, [is] totally disabled so as to prevent him from performing any work for compensation, gain, or profit, or from following a gainful occupation."

The question arises out of the following facts: A few months after appellee was stricken, his wife left the farm and rented a house in the city of Opelousas, which she operated as a boarding house. The rear of this house was a few feet from the rear of a cafe in the same block. This cafe went out of business a short while after appellee's wife began taking in roomers and boarders, and she took over its operation. Owing to the excellence of her cooking, the cafe rapidly built up business, and under her management prospered. In the fall of 1932 appellee's wife moved upon a small farm a short distance out of Opelousas and gave her attention to the raising of vegetables, poultry, and pigs to supply the cafe. An elder son took over the management of the cafe and ran it until the year 1937, when a daughter took charge and ran it until war was declared in December 1941. She was succeeded by her younger brother who looked after the cafe until 1942, when one of the young women employees was put in charge; she was managing the business at the time of the trial.

In 1936 the appellee purchased on credit the building in which the cafe was located, giving a mortgage on the property and on his home to secure the credit obligation. The quarterly instalments were met from rents of a drug store located in the building, rents from offices in the building, and the profits from the cafe.

The position taken by the appellant is based upon its theory that the building purchased by appellee in 1936 and the cafe business begun by appellee's wife in 1930 and continued to date have been supervised and managed by appellee. This theory of appellant finds no support in the evidence, which is overwhelmingly to the effect that appellee had little to do with the management of the building, and that, while he was in and out of the restaurant many times daily, he was physically unable to do any of the work except occasionally to accept payment from a customer; and that the management, including the planning of meals, the buying of provisions, the collecting and banking of funds, was all handled by others.

Four medical experts who had treated appellee over the years of his affliction testified that it was their opinion that appellee from the beginning suffered constant and severe pain, that he was totally and permanently disabled and will be so until his death, that he was not able to perform any work or follow any gainful occupation, that work of a sedentary nature would aggravate and increase his suffering, and that any mental or physical strain, no matter how mild, would be detrimental to his health. This testimony is uncontradicted—even unchallenged. We must, as did the jury, accept it as true.

Appellant complains that it was seriously prejudiced by the ruling of the Court below in allowing appellee's attorney to read to the jury the allegations of Article 16 of his petition; that said article made reference to a suit brought by the appellee against the Equitable Life Assurance Society in the State Court for similar benefits and recited that a judgment had been obtained by the appellee therein awarding disability benefits and requiring the Equitable Life Assurance Society to pay penalties and attorney's fees. When Article 16 was read, appellant objected thereto on the ground that the matters therein set forth were irrelevant and immaterial. Appellant's remedy under Rule 12(f) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, was a motion to strike said allegations; having failed to do so, its admission of the truth of the allegations in its answer was pertinent on the question of the reasonableness of appellant's refusal to pay the disability benefits for which the appellee sued.

Appellant further complains that the Court below erred in not giving the following charge to the jury: "I charge you that if the insured is able to do any work whatsoever for remuneration or profit which is within his mental capacity, then you must find for the defendant and it is not necessary that he be able to follow his customary or usual occupation. It is necessary that he be unable to follow any occupation which would give him remuneration or profit." The charge was properly refused for two reasons: (1) There were

no facts to support it, and (2) it is not a correct statement of Louisiana law, controlling in this case. The rule in Louisiana is set forth by the Supreme Court of that State in Crowe v. Equitable Life Assurance Society, 179 La. 444, 154 So. 52, 54, in this language:

"* * * we think that the true rule governing cases of this kind is stated in 7 Couch on Insurance, § 1670, p. 5769, as follows, viz.:

" '* * * It may be said, generally speaking the provisions in life, health and accident insurance policies for indemnity in case the insured becomes totally, permanently or wholly disabled, etc., do not require that he shall be rendered absolutely helpless, but, rather, merely requires such disability as renders him unable to perform the substantial and material acts of his business or occupation in the usual and customary way. At least such a rule has been in substance adhered to, where the policies required that he be totally disabled from transacting any and every kind of business. * * *'

"The rule is stated in 14 R.C.L., § 491, p. 1315, as follows, viz.:

" 'The rule prevailing in most jurisdictions is that the total disability contemplated by an accident insurance policy does not mean, as its literal construction would require, a state of absolute helplessness which can result only from loss of reason, since as long as one is in full possession of his mental faculties he is capable of transacting some part of his business, whatever it may be, although he is incapable of physical action. On the contrary, these courts, giving consideration to the object of the contract, hold that the "total disability" contemplated by the agreement is inability to do substantially all the material acts necessary to the prosecution of the insured's business or occupation in substantially his customary and usual manner.' "[1]

Act No. 310 of 1910 provides that no life or accident insurance company shall defer payment of disability benefits longer than thirty days from the notice of disability "without just and reasonable grounds such as to put a reasonable and prudent businessman on his guard," and "that the insurance company guilty of such delay in payment, unless upon just and reasonable grounds, shall pay to the assured, as a penalty, double the amount due under the terms of the policy or contract, during the period of delay, with attorney's fees to be determined by the tribunal before whom suit is instituted."

In addition to the proof of disability made by appellee in 1930, the record shows that he furnished promptly over the years proof of his continued disability. After disability payments were stopped in 1942, and before suit was filed, he was examined by three Company physicians and all available data dealing with his condition was offered to appellant; it, however, persisted in its refusal. We cannot say as a matter of law that there existed any reasonable ground for said refusal. The determination by the jury of the issue presented was warranted by the evidence.

In his charge to the jury, the Court below read to the jury the facts and the law from numerous Louisiana Supreme Court cases. Such a course, instead of proving helpful, could not do else but confuse. Instead of advising them as to what the law was, it was more likely to leave the jury in a state of bewilderment. The charge as thus given was not objected to and is not urged in the specification of errors, hence, is not before us for consideration.

We find no merit in the cross-appeal.

The verdict of the jury was clearly right on the evidence, and the judgment is accordingly affirmed.

---

[1] See Phillips v. Mutual Life Insurance Co. of N. Y., La.App., 155 So. 487; Boughton v. Mutual Life Insurance Co. of N. Y., 183 La. 908, 165 So. 140; Harris v. New York Life Insurance Co., 195 La. 853, 197 So. 579.