# MUTUAL LIFE INS. CO. OF NEW YORK v. PICARD.

# PICARD v. MUTUAL LIFE INS. CO. OF NEW YORK.

## No. 11487.

Circuit Court of Appeals, Fifth Circuit.

April 18, 1946.

Rehearing Denied May 17, 1946.

SIBLEY, Circuit Judge, dissenting.

---

Richard B. Montgomery, Jr., of New Orleans, La., for Mutual Life Ins. Co. of New York.

Walter Lemann, of Donaldsonville, La., and Walter Suthon, Jr., J. Blanc Monroe, and Monte M. Lemann, all of New Orleans, La., for Picard.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

McCORD, Circuit Judge.

The Mutual Life Insurance Company sued Henry M. Picard and others to determine its liability on certain policies of insurance providing for payment of disability benefits.

The Insurance Company first sought to recover disability insurance which it had paid to Picard from the year 1936. This part of the suit was dismissed with prejudice. The only questions remaining and which are here for decision are the liability of the Insurance Company for disability benefits from April, 1944, and the cross appeal by the insured seeking recovery for statutory penalties and attorney's fees.

Prior to 1931 Picard was secretary of Picard & Geismar, Ltd., a corporation that operated several plantations, a cotton gin, and a mercantile store. Picard had charge of the cotton gin during the ginning season, supervised the plantations, and managed the mercantile store. His duties in connection with the management of the store required him to work long hours, stand on his feet, lift heavy packages and articles, and on occasion serve the customers personally. At the same time Picard operated a commission agency for Standard Oil Company, handling and selling gasoline, oils and other products, and he was also connected with an insurance company.

In March, 1931 Picard became seriously ill and entered the Touro Infirmary, in New Orleans, where he remained from May 4, 1931 to June 16, 1931. His condition was diagnosed at that time as a partial heart block, myocarditis, hypertrophic arthritis and reflex cordio-spasm. He was advised by his physician to refrain from driving an automobile, to avoid physical exertion or

anything requiring nervous stress or strain and to take rest periods. Following this advice the defendant abandoned all of his former activities except his connection with the Standard Oil Company and his insurance business, and he finally gave up work or supervision of the insurance business.

On July 16, 1931, Picard filed a claim for disability benefits on the three policies which he carried with the Insurance Company, and on the proof submitted, the Insurance Company approved the claim and began payment of the benefits, which increased from $120 per month in 1931 to $240 a month in 1944. The Insurance Company, however, discontinued payments under the insurance contracts in April, 1944, on the ground that Picard was not totally disabled and had not been since January, 1936.

Much testimony was adduced on the trial, and the record is replete with evidence showing the physical condition of Picard from the first payment of disability insurance in 1931 until the day of trial. The evidence further shows that agents and detectives of the Insurance Company had made careful inspection from time to time of the movements of Picard, what he did, how much he rested, how many trips he made in his automobile, and the places he visited.

The evidence further shows that Picard still retains his connection with the Standard Oil Company under the name of Gonzales Oil Company; that he has had this business for many years; that he goes out in his car from time to time with some one driving for him, but he does practically no business, and only meets his customers and discusses various questions, much of which does not pertain to business; that the daily sales of the oil business are made by one Henry, an employee of the Gonzales Oil Company. Henry drives his truck to the refinery at Baton Rouge, Louisiana, and there loads the gasoline; he thereupon returns to the town of Gonzales and makes deliveries to customers, records the sales; then his daughter, acting for him, places the money collected in the bank to the credit of Gonzales Oil Company. Picard would make trips to Gonzales about twice a week; sometimes on account of his illness he would make only one trip in a month. The books of the company were kept in Baton Rouge at the residence of the defendant by a part time bookkeeper, under the supervision of the defendant or some member of his family. The defendant did not attempt to sell or deliver the products of the Standard Oil Company, and his selling activities consisted of occasional orders sent in or special requests for articles not usually carried on the tank truck by Henry. From a very careful reading of the record evidence, it becomes patent that the mechanics of selling and delivering the gasoline and oil was handled almost entirely by the employee, Henry, and Picard's supervision was neither desirable nor necessary, since Henry had done this same work for approximately twenty-two years and was an efficient and loyal servant. The defendant Picard, usually accompanied by his son, would go to the office of the Standard Oil Company in Baton Rouge, sometime once a month, but ordinarily about twice a week, to settle the company's accounts. His son usually handled the details of these transactions, and would always drive the car.

The evidence further disclosed that the defendant still has occasional fainting and choking spells caused by the failure of food to pass from his mouth to his stomach. This disease has been diagnosed to be reflex cordio-spasm. Further, that his condition has not shown substantial improvement since 1931, and the same advice given him then and which he has followed, is applicable now. As late as April, 1944 the defendant has had to remain in bed on orders of his physician. Since 1931 he has developed hypertension, or high blood pressure, which further limits the scope of his possible activities.

R. L. Dwyer, a field representative of the Standard Oil Company, testified:

"I would say that the business could continue regardless of Mr. Picard being ill, because he has a very capable man on the truck, because he has been there probably for years, God knows how long he has been working on the truck. There are all of the dealers down there that have been very loyal, the Standard Oil Company, because we have the business. Very seldom we lose an account in that territory."

Jackson, an inspector for the Insurance Company, in a report on the defendant's activities, and which is in the record, stated that:

" * * * due to the circumstances or the type of business, that his (the defendant's) income would probably continue even if he did not visit the business at all. His general activities do not seem to indicate

that he would be able to engage in any regular activity. He also seems to have adequate medical support in his claim for total disability."

The record is voluminous and many witnesses testified, including four physicians and several inspectors. At the conclusion of the trial the jury found a verdict for Henry M. Picard, the defendant, holding that he was totally disabled and unable to work, the judgment being for disability amounts with interest withheld from April, 1944.

On the cross appeal which was for penalties and attorney's fees the jury returned a verdict for the defendant, and refused to allow recovery.

The policies each contain the following paragraphs and upon which decision here must turn:

"* * * that he has become totally and permanently disabled by bodily injury or disease, so that he is, and will be permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit and from following any gainful occupation."

\* \* \* \* \* \*

"* * * that (if) the Insured is able to perform any work or follow any occupation whatever for compensation, gain or profit, no further premium shall be waived and no further income shall be paid."

█ The courts of last resort of Louisiana have declared the rule in construing policies of insurance providing for disability benefits to be:

"* * * It may be said, generally speaking, the provisions in life, health and accident insurance policies for indemnity in case the insured becomes totally, permanently or wholly disabled, etc., do not require that he shall be rendered absolutely helpless, but rather, merely requires such disability as renders him unable to perform the substantial and material acts of his business or occupation in the usual and customary way. At least such a rule has been in substance adhered to, where the policies required that he be totally disabled from transacting any and every kind of business. \* \* \*

"The rule is stated in 14 R.C.L., Section 491, p. 1315, as follows, viz.:

"'The rule prevailing in most jurisdictions is that the total disability contemplated by an accident insurance policy does not mean as its literal construction would require, a state of absolute helplessness which can result only from loss of reason, since as long as one is in full possession of his mental faculties he is capable of transacting some part of his business, whatever it may be although he is incapable of physical action. On the contrary, these courts, giving consideration to the object of the contract, hold that the "total disability" contemplated by the agreement is inability to do substantially all the material acts necessary to the prosecution of the insured's business or occupation in substantially his customary and usual manner.' "

Crowe v. Equitable Life Assurance Society of U. S., 179 La. 444, 154 So. 52; Boughton v. Mutual Life Insurance Co. of N. Y., 183 La. 908, 165 So. 140; Manuel v. Metropolitan Life Ins. Co., La.App., 139 So. 548; Phillips v. Mutual Life Ins. Co. of N. Y., La.App., 155 So. 487; Cates v. Jefferson Standard Life Ins. Co., La.App., 159 So. 168. This rule was followed by this court in Mutual Life Ins. Co. v. Daigle, 5 Cir., 142 F.2d 1000; Mutual Life Ins. Co. of N. Y. v. Davis, 5 Cir., 142 F.2d 332.

The Louisiana rule was submitted to the jury by the court below, and the charge as given covered fully and fairly every issue in the case.

█ The jury was warranted, we think, in finding that the defendant was receiving an income from the "good will" of the business, and the faithful and efficient work of the employees and the family of defendant, and not from any work which he did. Home Ins. Co. of N. Y. v. Tydal Co., 5 Cir., 152 F.2d 309.

From March 1, 1931 through March 1, 1944, the Insurance Company received at its home office in New York, thirteen written and signed statements furnished by defendant. It also received fourteen physicians' statements as to disability; three reports from insurer's physicians; five written reports from its own examiner; several electrocardiograms; and nine reports from insurer's own detectives and investigators.

█ If this were a case of first impression, we would be inclined to grant penalties against plaintiff and charge it with an attorney's fee. Mutual Life Ins. Co. v. Daigle, 5 Cir., 142 F.2d 1000, 1003. However, a jury after consideration of the evidence before them found that there was "just and reasonable grounds" for refusing to continue payments of disability benefits,

and we are, therefore, unwilling to overturn such verdict.

We find no reversible error in the record, and the judgments are affirmed.

SIBLEY, Circuit Judge (dissenting).

The jury refused to award penalty and attorney's fees, thereby finding there "were just and reasonable" grounds for not promptly making the disability payments in controversy. If they had been more accurately instructed by the judge they might easily have found that the payments are not owing. The evidence summarized in the opinion as supporting the verdict for this recovery is that most favorable to Picard. There was much evidence not so favorable. It was shown that after his breakdown in 1931 he resumed his business for the Standard Oil Company, and earned that year in commissions $4,302, increasing to $8,346 in 1941. After paying his help and all other expenses the net earnings shown on his income tax returns averaged about $3,500 per year. In 1942 he changed from a commission basis and began buying in bulk and reselling to his customers in his territory, incorporating the business; and he received from it for himself and wife $4,200 as annual salary. The corporation made some profits over and above this salary and its taxes. Observers saw Picard in 1943 and 1944 absent from home and calling on his trade for as much as six and seven hours per day, and making trips to New Orleans to the office of Standard Oil Company. His wife, though nominally an officer of the Corporation, did no work for it. His minor son, a student at college, drove him in his car, and helped some. Picard and his physician both testify that his work is not injuring him and that his health is better. An officer of Standard Oil Company testified that it is well satisfied with his conduct of his territory.

Without further detail it becomes evident that Picard is successfully carrying on a profitable occupation without injury to his health, using his son as chauffeur when he has to travel. This was one of his occupations when he fell ill in 1931, though on a smaller scale. He is still unable to run the store and manage a plantation as he was doing in 1931, then working ten to fourteen hours per day.

Now the Insurance Company had up to 1944 paid in disability payments about $30,000 on life policies whose face was $14,000. It thought it should recover back the payments made after 1935, but that claim did not succeed because there was no fraud or mistake inducing them. But the policies provide that if after disability has been established and further premiums have been waived it appears "that the insured is able to perform any work or follow any occupation whatever for compensation, gain or profit, no further premium shall be waived and no further income shall be paid." This is the controlling agreement here. It does not mention, indeed expressly puts aside the occupation which was pursued before disability and says in the plainest words that if the insured becomes able to perform any work or follow *any occupation whatever* for compensation, gain or profit," the payments are to cease. I would not construe these words with literal harshness, as requiring that one remain helpless, or not even able to work at intervals. The work which he can do ought to amount to a job, or the business occupation which he can follow ought to be a substantial one. To my mind, Mr. Picard has a substantial occupation which he continuously follows with substantial profit, notwithstanding he can no longer work ten hours every day, and must have a chauffeur to drive his car. Inability to drive a car is no serious matter. Neither the writer of the majority opinion nor of this dissent drives a car, but neither considers himself disabled. It was at least a jury question whether Picard is under his policies entitled to continued payments.

The charge to the jury did not fairly and fully put the case before the jury. After reading a long extract from Crowe v. Equitable Life Ins. Co., 179 La. 444, 154 So. 52, the judge said: "The test of total disability under these policy provisions is whether the person insured and claiming to be disabled could carry on his former or a similar business in substantially his customary and usual manner. In determining whether Mr. Picard is disabled under these policy provisions you should accordingly compare the business and working activities in which he was qualified to engage and *did engage just prior to becoming ill* with what you find him able to perform in his present condition. * * * If the insured is only able to do and only does light work as compared with his business and working activities *prior to the time when he became impaired,* he is entitled under the law of Louisiana to receive disability benefits under such a policy provision." The following requests to charge of the Insurance

Company were refused: "If the insured in such a contract is capable of engaging in any work of a substantial nature, regardless of whether it was the type of occupation he was engaged in at the time he took out the policy, or claims to have been disabled, he is not totally disabled within the policy provisions. "I charge you that if you believe that the insured has, as a matter of fact, been engaged in a gainful occupation or has performed any work for compensation, gain or profit, that you must find for the insurance company in this case."

The last quoted request is in the very words of the contract. Why should it not be given? The one preceding correctly states that the gainful occupation now engaged in need not be the one followed when the disability began. The charges given made Picard's ability to work and the occupation he was engaged in when he became ill the sole standard of comparison, which I think is most manifest error. Picard was then trying to do too much, as many men do, and broke down. He probably will never again be able to do all he was doing, but he has retained a part of his occupation and is prosecuting it with success. The only fact question I see is whether he is *really running the business* or not. I do not think the charge fairly presented that question, but confused it by referring to what he could do in 1931, as a false standard.

The district judge and the majority opinion speak of the "Louisiana law" and the "Louisiana rule" in such cases. There is no law or rule peculiar to Louisiana. This court on due consideration so held in Metropolitan Life Ins. Co. v. Pitcher, 5 Cir., 108 F.2d 621, after examining Crowe v. Equitable Life Ass'n Soc., 179 La. 444, 154 So. 52, which is said to have established the peculiarity. These policies were taken out in 1918 and 1919 and the Crowe case was decided long since. They mean now what they meant when issued, being in plain English. But the Louisiana court has not undertaken to establish any new law or rule for that State in the Crowe case and those following it. It took its law by quotation from standard text books, 7 Couch on Insurance, § 1670 and 14 Ruling Case Law, Insurance § 491. The quotations however relate to the question of original totality of the disability in the occupation then followed. Couch deals with other occupations in Sections 1686 and 1687. Ruling Case Law refers to them in Section 491. In none of the Louisiana cases has the question of developing another substantial occupation been dealt with. In one (Strauss v. New York Life Ins. Co., 204 La. 202, 15 So.2d 61) the insured was given $15.00 a month by a friend to keep some books, but that was manifestly not substantial. The cases were all decided as presenting mixed questions of law and fact. I do not think the court meant to establish as a rule in Louisiana that the plain meaning of the contract may be disregarded, because that would be not only unlawful but judicially dishonest. If it did mean to do that, I would still think the federal court ought not to follow it touching contracts made before such a rule was announced.

The decision of this court in Metropolitan Life Ins. Co. v. Pitcher, 5 Cir., 108 F.2d 621, was correct, and has never been disapproved by the Supreme Court of Louisiana. The requests to charge made in this case were based on it. Our case of Mutual Life Ins. Co. v. Davis, 5 Cir., 142 F.2d 332, is also correct. The insured there could do no work and had done none; we held the fact that he had an ample income from his property and investments did not prevent his recovery of disability payments. No question of the charge to the jury was presented. In our case of Mutual Life Ins. Co. v. Daigle, 5 Cir., 142 F.2d 1000, we upheld a jury finding that the insured was not conducting the new business attributed to him. There was a request to charge the jury about a new business which was refused; and this was rightly held no error for the reason there was no evidence to base it on. The other reason given that it was contrary to the law of Louisiana was superfluous; and I thought and still think of doubtful correctness; and the request was too broadly worded.

In the present case there is abundant evidence amounting almost to demonstration that Picard is carrying on a new business amounting to a substantial occupation, though not his main occupation when he became ill. If so, the insurance company does not have to continue to pay disability benefits under its contract nor continue to carry the life insurance without premiums. The charges given and refused which dealt with this matter are I think reversible error.