KENNON, Justice.
 

 Plaintiff, holder of three insurance policies with the defendant, had been collecting monthly, permanent total disability benefits for more than 10 years prior to March 1944. Alleging that Picard was not totally disabled and had not been so since January 1, 1936, the defendant company, in April 1944, discontinued payments and entered suit in the Federal Court, praying for refunds and requesting a declaratory judgment as to whether the insured was totally and permanently disabled within the provisions of the policy. Picard filed a counterclaim in the Federal Court, seeking judgment for disability benefits from March 1944, with penalties and attorney’s fees under Act No. 310 of 1910. The jury in the Federal Court gave Picard disability benefits to April 1, 1945 (date of judgment) denying him penalties and attorney’s fees. Each party perfected an appeal to the United States Circuit Court' of Appeals and in August 1945, while the Federal Court appeals were pending, Picard, exercising the right reserved to him in the Federal Court judgment, filed the suit now before us for the monthly benefits that had accrued since the date of that judgment, and prayed for penalties and attorney’s fees under Act No. 310 of 1910. After a denial of the company’s plea that the trial of the case should be delayed pending the decision on its ap■peal in the Federal Court, the State district court awarded judgment in favor of Picard for the monthly disability payments sued for, plus penalties and attorney’s fees. The present appeal is from that judgment.
 

 Since the trial of the case in the State district court, the United States Court of Appeals, 5 Cir., 155 F.2d 105, with one judge dissenting, has affirmed the district court judgment, monthly payments are now being made to Picard as they accrue, and appellant here has conceded that there is no further contest on the monthly payments covered by the State judgment. Therefore, the only question now before this-Court is whether or not the State district court was correct in awarding penalties and attorney’s fees under Act No. 310 of 1910.
 

 Appellant’s contention here is that the judgment of the United States District Court denying penalties and attorney’s fees is res adjudicata as to all questions'except as to whether or not the insurance company was reasonable in refusing to pay until a final decision in the Federal Court, and
 
 *121
 
 cites authorities that a matter once determined in a Federal Court is res adjudicata as to this same matter between the same parties in a State court. We concede the principle of law set forth in the cases cited but our examination of the record of the case before us — and of the Federal Court record, which was introduced in evidence and by stipulation became part of the State proceedings — does not lead us to the conclusion that the Federal Court judgment is res adjudicata on the question before us, namely, whether defendant is responsible for the 1945 penalties and attorney’s fees for which it has been cast.
 

 The payments for which Picard received judgment under his counterclaim in the federal proceedings began with the month of April, 1944. The judgment states that “ * * * there is reserved to defendant Henry M. Picard the right to sue for any disability income payments claimed by him to be due, and not paid, accruing after April 1, 1945, the date of the accrual of the last disability income payment merged in this judgment.”
 

 The Federal Court judgment did not award or deny plaintiff any penalties under the Act of 1910 or even any monthly benefits under the policy for any time after
 
 April 1, 1945.
 
 However, the April 1, 1945 Federal Court judgment did in paragraph 3, provide: “That the demand of defendant Henry M. Picard for statutory penalties and attorney’s fees be and it is hereby rejected.”
 

 At first glance, it would seem highly persuasive, if not binding, in making a decision as to whether penalties were due for the months of April, May, June and July, 1945, that a Federal Jury should have rejected the same penalties, etc., for the period up to-April 1,
 
 1945.
 
 However, a study of the Federal Court record shows that the issue of whether or not the company should be condemned to pay the penalties, and attorney’s fees was based completely upon the situation of Picard and the status of his records, etc., with the insurance company as of April,
 
 1944.
 

 The company had read to the Federal Jury a stipulation containing the following:
 

 “ * * * if Mr. McKinley of the Mutual Life Insurance Company were present on the stand, that he would testify that he -had before him (April 1, 1944) the various-documents that were offered in evidence, the physician’s report, certain forms which were filled out by Mr. Picard, and that the only knowledge that he had of the case was that which had been derived from the record and
 
 after inspection by Mr. Schewmaker and his
 
 report, it was decided to-discontinue disability benefits. * * * ” (Emphasis and parenthesis by author of this opinion.)
 

 The Federal judge charged the jury that they should disregard, in determining-whether penalties, etc., were due, any information or advice that came to the com
 
 *122
 
 pany after
 
 April, 1944.
 
 We quote from that charge:
 

 “ * * * The date as of which you will determine whether the insurance company had just and reasonable grounds for contesting its liability for these disability benefit payments would be thirty days after April 1, 1944, the due date of the first installment it refused to pay. Any information or advice that came to the company more than thirty days
 
 after April 1, 1944,
 
 should not be considered by you in determining its liability for statutory penalties and attorney’s fees.”
 

 Therefore, the verdict of the jury on penalties, etc., though rendered in 1945, must be considered as binding, either legally or for persuasive effect, as to what reasonable and justifiable grounds for refusing payment were in possession of the company in April,
 
 1944.
 

 The question presented in the State court —and now before us for review — was whether penalties are due for May, June and July,
 
 1945,
 
 and whether or not the defendant company had just and reasonable justification for refusing to make those payments as of April, 1945. In the Federal Court the defendant elected to offer considerable testimony, reports and documents, including one more than 25 pages long — for the sole purpose of showing the jury that their Mr. McKinley — apparently the representative of the company who made the decision in 1944 to discontinue the Picard payments — had just and reasonable grounds for recommending that the payments stop and under the judge’s charge to the jury that they should not consider — in determining whether penalties should be assessed — “any information or advice that came to the insurance company more than thirty days after April 1, 1944”, it follows that the jury’s verdict would not be a safe guide — or even purport to be an indication of what the jury itself thought — as to the reasonableness or justness of the company’s position in refusing to pay payments as of April, 1945, after the company had had a year in which to continue its investigation, which no doubt was intensified just prior to the trial of the case and after the company’s attorneys and agents had been present during and participated in a three day hearing in court and heard a jury’s decision that Picard was permanently and totally disabled within the meaning of his policies.
 

 Our study of the record and consideration of the applicable law convinces us that penalties were properly awarded, in the District Court. The record sustained the finding of the district judge that the plaintiff suffered a heart attack in 1927 and that he was confined to the Touro. Infirmary for the same condition in 1931, where his condition was diagnosed by Doctors Brown and Simon as “partial heart block, myocarditis, hypertropic arthritis and reflex cardiospasm.”
 

 
 *123
 
 In the trial of the case the surviving one of these two doctors testified that Mr. Picard was not then in a position to resume his occupation without danger to his heart and that increased activity would likely provoke “more attacks of cardiospasm.” It is true that plaintiff was able — to give a limited amount of supervision to a wholesale oil business, the physical effort involved being carried on by employees other than plaintiff, but the evidence shows that the operation of this business is inconsequential as compared to the extremely active life he led prior to the beginning of his disability when, at on'e and the ■ same time, he was active in the operation of the plantation store, the supervision of cultivation of crops of cane, cotton and corn, the handling of the general business of the plantation owning corporation with its tenants, including keeping and collection of accounts as well as the operation of the cotton gin during the fall season.
 

 In 1945 the sole business connection was with the wholesale oil company. While he made a substantial income, this was accomplished with little physical and business effort, due to his being owner of the business, including the franchise for the bulk sale of Standard Oil products, the good will of his customers and the fact that he had capable employees. Plaintiff made trips every few days from his home in Baton Rouge to the trade area near Gonzales or to the Standard Oil Refinery near Baton Rouge, but he has not since 1931 operated his own automobile and an employee or some member of his family served as chauffeur on his trips.
 

 Louisiana has accepted the well-recognized rule that total disability contemplated by an insurance policy does not require, in order for recovery to be had, that the insured be rendered absolutely helpless, but rather that the disability should render him unable to perform the substantial and material acts of his business or occupation in the usual and customary way.
 

 The facts of this case are such as to entitle the plaintiff to penalties and attorney’s fees under the well-established jurisprudence of this State. Bankson v. Mutual Benefit Health & Accident Ass’n, 208 La. 1008, 24 So.2d 59; Campasi v. Mutual Benefit Health & Accident Ass’n, 207 La. 758, 22 So.2d 55; Harris v. New York Life Ins. Co., 195 La. 853, 197 So. 579 and Stern v. New York Life Ins. Co., 186 La. 381, 172 So. 426.
 

 This holding is in harmony with the conclusion of the Federal Court of Appeals, which while declining, under federal rules, to disturb the jury verdict, stated: “If this were a case of firsf impression, we would be inclined to grant penalties against plaintiff and charge it with an attorney’s fee. Mutual Life Ins. Co. v. Daigle, 5 Cir., 142 F.2d 1000, 1003.” Mutual Life Ins. Co. v. Picard, 5 Cir., 155 F.2d 105, 107.
 

 
 *124
 
 The judgment of the District Court is affirmed with costs.
 

 HAMITER, J., dissents.
 

 PONDER, J., absent.