On Rehearing.
 

 HAMITER, Justice.
 

 The appeal in this case, perfected by the defendant insurance company, was from a judgment awarding to plaintiff four monthly disability payments (May 1, 1945 to August 1, 1945, both dates inclusive) under the provisions of three policies of insurance issued by that company, and also' awarding to him statutory penalties and attorney’s fees for the insurer’s refusal to make the payments.
 

 Subsequent to defendant’s taking the appeal, the Federal Circuit Court of Appeals (Fifth Circuit) 155 F.2d 105 affirmed a judgment of the Federal District Court which granted to plaintiff previous monthly
 
 *127
 
 ■disability payments (April 1, 1944 to April 1, 1945, both dates inclusive) under the provisions of the same three policies and for the same continuing disability, but which rejected his demands for statutory penalties and attorney’s fees. As a consequence of that affirmance, the defendant insurer (appellant) now concedes liability for the monthly payments involved herein; but it disputes plaintiff’s claim for the penalties and attorney’s fees.
 

 Much of the factual situation of this litigation is well stated in the brief of plaintiff’s counsel, and from it we quote the following:
 

 “This is the second suit between these litigants on claims of this character under these policies. In 1931, some twelve years after the issuance of the policies, plaintiff filed a disability claim on account of ill health, consisting chiefly of a heart ailment, which sharply restricted his business and working activities. Defendant recognized this claim and paid the stipulated monthly income payments continuously from 1931 down through and including the payments due on March 1, 1944. Defendant then challenged plaintiff’s claim and, in April, 1944, filed suit against plaintiff in the United States District Court at Baton Rouge, seeking an adjudication that plaintiff was no longer disabled and was not entitled to any further monthly income payments.
 

 “Plaintiff, as defendant- in that suit, counterclaimed for monthly income payments together with statutory penalties and attorney’s fees under Act No. 310 of 1910. We refer to that suit as the Federal Court Suit.
 

 “The trial of the Federal Court Suit before a jury resulted in a verdict for the insured (plaintiff herein) for monthly payments, and a verdict against him on his demand for statutory penalties and attorney’s fees. The judgment entered upon this verdict was affirmed by the United States Circuit Court of Appeals for the Fifth Circuit, upon appeals by both litigants; see Mutual Life Ins. Co. of New York v. Picard, 155 F.2d 105. Judge Sibley dissented as to that portion of the judgment awarding recovery of the monthly income payments. The opinion of the court in that case outlines and summarizes the factual and legal basis for the recognized disability claims of plaintiff.
 

 “The recovery had by plaintiff in the Federal Court Suit consisted of the monthly income payments, at the rate of $280.00 per month, during the period from April 1, 1944, to April 1, 1945, and inclusive of both of those dates. That case was tried before a jury in April, 1945, and the judgment rendered on the verdict comprehended all monthly payments accruing from the date of stoppage of payments up to the date of trial. While the Federal Court Suit was pending on appeal, the present suit was filed in the State District Court at Baton Rouge.on August 24, 1945, seeking recovery of the four monthly income pay-
 
 *128
 
 merits of $280.00 each accruing in the interval between that date and the period embraced in the judgment which had been rendered in the Federal Court Suit, together with statutory penalties of $280.00 each on the first three of these monthly income payments which (if recoverable) were in default for more than thirty days when the present suit was filed, and statutory attorney’s fees in the amount of $150.00.
 

 “Defendant first unsuccessfully sought to stay the present suit on'account of the prior institution and pendency of the Federal Court Suit. Then, under an agreement of counsel, the present suit was tried upon the record of the Federal Court Suit plus whatever additional testimony either party elected to offer. Not much additional testimony was presented, and the factual case here is substantially that presented in the Federal Court Suit.
 

 “The present case was argued and submitted in the District Court while the appeals were pending in the Federal Court Suit and before the argument on those appeals. After the Federal Court Suit had been argued and submitted in the Fifth Circuit Court of Appeals, but before decision there, the District Judge rendered judgment in the present suit in favor of plaintiff for all items demanded. He filed a written opinion stating his reasons for this judgment on each branch of the case (Tr., pp. 27-50). The appeal of defendant in the present suit was taken before decision on appeal in the Federal Court Suit, but this appeal was perfected through the filing of the transcript here after the decision on appeal in the Federal Court Suit had been rendered and had become final.”
 

 Supplementary to the quoted statement, it is appropriate to point out that the appeal of the insurance company in the Federal Court case was perfected as a supersedeas, being the same as a suspensive appeal in this court, and sufficient bond was posted.
 

 Moreover, as appears from a stipulation of counsel (with attached exhibits) filed here, when the Federal Court judgment became final the insurer paid to the insured the full amount recovered thereunder; and immediately thereafter (within 30 days after the Circuit Court of Appeals’ mandate was forwarded to the Federal District Court) it tendered to the plaintiff payment for all monthly benefits under the policies (including interest thereon) due to that date. This tender, which was refused, covered the four monthly installments claimed in this action. It covered also payments from September 1, 1945, to July 1, 1946 (both dates inclusive), which form the basis of another or third suit, instituted in the District Court of East Baton Rouge Parish subsequent to the commencement of the present action, wherein plaintiff is claiming, in addition to the mentioned monthly benefits, statutory penalties of $2,-800 and attorney’s fees in the amount of $2,500.
 

 
 *129
 
 Since there is no contest in this suit now relative to liability for the four monthly payments involved (this was conceded following the affirmance of the Federal District Court’s judgment), the only question to be determined is whether or not defendant is obliged to pay the statutory penalties and attorney’s fees demanded.
 

 In resisting the payment defense counsel maintain that the Federal District Court judgment denying penalties and attorney’s fees is res judicata as to all questions, except perhaps as to whether or not the insurer was reasonable in taking a suspensive appeal from it and in refusing to pay until a final decision.
 

 The insurer acted reasonably, in óur opinion, in appealing suspensively from the judgment. Clearly, its appeal was not frivolous. The jury had just returned its verdict rejecting the insured’s demand for penalties and attorney’s fees, made pursuant to the provisions of Act No. 310 of 1910, which verdict necessarily was based on a finding of fact that the insurer’s delay in making payment and its litigating the claim was not, to quote the words of the statute, “ * * * without just and reasonable grounds such as to put a reasonable and prudent business man on his guard.” Furthermore, on the appeal one of the members of the court (Judge Sibley), as shown by his lengthy dissenting opinion, favored not only the rejecting of that demand but also the rejecting of the main demand for disability benefits. Said he in part:
 

 “The jury refused to award penalty and attorney’s fees, thereby finding there ‘were just and reasonable’ grounds for not promptly making the disability payments in controversy. If they had been more accurately instructed by the judge they might easily have found that the payments are not owing. * * * ”
 

 ******
 

 “In the present case there is abundant evidence amounting almost to demonstration that Picard is carrying on a new business amounting to a substantial occupation, though not his main occupation when he became ill. If so, the insurance company does not have to continue to pay disability benefits under its contract nor continue to carry the life insurance without premiums. The charges given and refused which dealt with this matter are I think reversible error.”
 

 Additionally, appeals, when not frivolous, are favored by the law. Of course, a stay of proceeding may be generally inconvenient for a plaintiff; but if not stayed the inconveniences for the opposing litigant would be much greater. State ex rel. George Ingram v. Judge of Sixth Judicial District Court, 20 La.Ann. 529.
 

 It appearing, therefore, that the insurer was reasonable in taking the suspensive appeal, we proceed to determine the effect of the Federal Court judgment, especially
 
 *130
 
 with reference to whether it was res judicata to the demand now under consideration.
 

 On this proposition plaintiff’s counsel, in their brief, say:
 

 “Defendant in its answer (Article XIV; Tr. p. 20) pleads the judgment in its favor in the Federal Court Suit on this issue as res adjudicata against the demand for penalties and attorney’s fees in the present suit. While the affirmance on appeal in the Federal Court Suit has made that judgment final and res adjudicata as to our demand for the period involved in that suit, we submit that this plea of res adjudicata is wholly without merit as to our demand for the later period involved in the present suit.
 

 “While this judgment pleaded as res adjudicata was rendered in a Federal Court, the case in which it was rendered involved no substantive question of Federal law and was in the Federal Courts solely under diversity-of-citizenship jurisdiction. The settled rule in that situation is that the effect of the Federal Court judgment as res adjudicata is determined, not by the Federal law, but by the law of the State in which the Federal Court rendering the judgment sits. Hence, the effect in the •present suit of the judgment in the Federal Court Suit as res adjudicata is governed by the law of Louisiana, rather than by any rule of Federal law. * * *
 

 * * * * * *
 

 “The issue on the plea of res adjudicata is accordingly to be determined by the effect which would be attributable to the judgment in the prior suit as res adjudicata, under the law of Louisiana, if the prior suit, in lieu of being in the Federal Courts, had been in the Louisiana State Courts. * * * ”
 

 Preliminary to a discussion of this issue, it is well to observe that the state district court was not deprived of its jurisdiction of the present suit by the pendency on appeal of the Federal Court action (this is contrary to an observation made in error by the writer in his dissenting opinion on the original hearing). As said in Kline v. Burke Construction Company, 260 U.S. 226, 43 S.Ct.
 
 79,
 
 81, 67 L.Ed. 226, 24 A.L.R. 1077, “Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court.” But the further comment is found in that case that, “Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res adjudicata by the court in which the action is still pending in the orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of the case.” Thus, while the state district court had the right to proceed with the case in its own way, the Federal Court judgment (on becoming final) had the effect of precluding
 
 *131
 
 the Louisiana courts from adjudging whatever thing was thereby adjudged.
 

 To test a judgment under the doctrine of res judicata governing in Louisiana, consideration, as plaintiff’s counsel point out, must be given to the provisions of Civil Code, Article 2286, reading:
 

 “The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.”
 

 Unquestionably, the demands of both the state and federal court actions are between the same parties and are formed by them against each other in the same quality. Furthermore, the demands made in this case, both the main (monthly payments) and incidental (penalties and attorney’s fees), are founded on the same cause of action as those in the Federal Court suit. The cause of action in each arises out of the insurer’s refusal in April, 1944, and its continuing refusal thereafter, to make monthly payments under the terms and provisions of its three insurance policies for an alleged continuing disability that commenced in 1931. After that cause of action was finally adjudicated favorably for plaintiff in the Federal Court, defendant not only paid the amount of the judgment rendered but it also tendered (the tender was refused) all other monthly payments accruing to that date, including those involved here. True, pending the Federal Court appeal, the insurer defended this action on the merits, after its plea of lis pendens had been overruled; but, on being forced to make such defense, it was contesting its primary or initial liability under the policies (plaintiff’s cause of action), not the amount due for particular installments.
 

 This brings us to the third and final requisite of the test, it being that the thing demanded must be the same. As to this, plaintiff’s counsel, to again quote from their brief, argue:
 

 “The plea of res adjudicata here does not come within the codal requisites in that, as to penalties and attorney’s fees, the ‘thing demanded’ in the Federal Court Suit and the ‘thing demanded’ in the present suit are not the same. The rejected demand for statutory penalties and attorney’s fees in the Federal Court Suit was for statutory penalties on the thirteen monthly income payments recovered in that suit, being the payments due on the first day of each of the thirteen months in the period from April 1, 1944, to April 1, 1945, and inclusive of both of these dates, and for statutory attorney’s fees for enforcing the payment of those particular monthly income payments (see pp. 29-32 of the printed record in the Federal Court Suit setting forth these specific demands in the counterclaim). The demand for statutory penalties and attorney’s fees in the present suit, for which plaintiff had judgment be
 
 *132
 
 low, is for statutory penalties on three of the four monthly income payments sued for and recovered herein, being the payments due on May 1, 1945, June 1, 1945, and July 1, 1945, and for statutory attorney’s fees for enforcing the payment of those particular monthly income payments (Tr„ pp. 11,12).
 

 “The statutory penalties sued for in the present suit had not even accrued, and were still in futuro, when the Federal Court Suit was tried in April, 1945, and when the claims and demands of the insured down to the date of that trial were merged in the verdict returned by the jury and in the judgment entered on that verdict on May 24, 1945 (see pp. 537-539 of the printed record in the Federal Court Suit). Plaintiff’s claim to the first statutory penalty demanded in the present suit did not even accrue until May 31, 1945, when defendant was in default for thirty days as to payment of the monthly income payment due on May 1, 1945. This was several days after judgment had been entered on the verdict of the jury in the Federal Court Suit.”
 

 Counsel’s argument, in our opinion, overlooks two important factors, these being (1) that the claim for statutory penalties and attorney’s fees is merely incidental to and dependent on the main demand for dis- . ability benefits, and (2) that in essence the main demand in each suit is for payments under the same policies for a continuing disability, and it arises out of defendant’s continuing refusal to pay which commenced in April, 1944. What is involved in both is only the right of plaintiff to recover for his continuing disability (not for any particular month or months), as well as the right of the insurer to deny payment until the dispute concerning that disability has been litigated and determined by a final judgment. For plaintiff to recover in the two suits, both on the main demand and the incidental demand, he must show initial and primary liability of the insurer under the policies and 'that the latter did not have just and reasonable grounds for refusing originally to pay. Here the disability claimed is not separable; neither is the refusal to pay. The disability alleged on in both cases is a continuing one, and it gives rise to a continuing refusal to make payment. The situation would be different if the cases concerned separate and distinct disabilities or separate and independent refusals to pay; but they do not.
 

 In the brief of plaintiff’s counsel it is further argued:
 

 “The lack of identity as to the ‘thing demanded’ in the Federal Court Suit and in the present suit, with respect to statutory penalties and attorney’s fees, is also demonstrated by the holding in State v. American Sugar Refining Co., 108 La. 603, 32 So. 965, that, on account of lack of identity as to this essential element, a judgment adjudicating the liability of a particular taxpayer for a particular tax in one year is
 
 *133
 
 not res ad judicata as to such liability in a subsequent year. * *
 
 *”
 

 In the American Sugar Refining Company case thus cited, the court, in passing upon the issue of the identity of the thing demanded, applied the test of whether the previous demand had been decided on a question of law or on a question of fact. Having found that only a question of law was the basis for the judgment pleaded, it held the plea of res judicata to be without merit. Had the question been one of fact, the holding clearly infers, res judicata would have been sustained. Said the court [108 La. 603, 32 So. 966] : “* * * there can be no objection to litigating a second time a question of law, provided the litigation is in connection with different facts.”
 

 The issue respecting penalties and attorney’s fees in the cases under consideration is purely and solely one of fact- — whether the insurer had just and reasonable grounds for refusing to pay plaintiff’s continuing disability claim. And the facts surrounding that issue are the same as is evidenced by the litigants’ act of having tried this case almost wholly on the record of the previous litigation. As to the trial in the state district court, plaintiff’s counsel say that, “Not much additional testimony was presented, and the factual case here is substantially that presented in the Federal Court Suit.”
 

 An able analysis of the American Sugar Refining Company case, as well as an excellent discussion of the distinction made therein (for applying the doctrine of res judicata) between a judgment determining a question of law and one adjudicating a factual issue, is found in Carpenter v. Metropolitan Life Insurance Company, La.App., 167 So. 223, 226. Therein the plaintiff sued for monthly insurance payments and the defendant pleaded in bar of the action a judgment in a previous suit, involving the same policy but different monthly installments, which had decreed the contract no longer in existence. The court correctly sustained the plea of res judicata, pointing out that the issue in the two suits was identical and was strictly one of fact, and also commenting as follows:
 

 “It is settled by the jurisprudence that a court has the right to reconsider questions of law previously determined between the same parties, provided that the thing demanded has come into existence at a different time from the thing demanded in the prior litigation.
 

 “But, where the dispute has been determined on questions of fact, the principle of res adjudicata precludes the court from entertaining it again, even though the thing demanded may not be identical with relation to the time of accrual as the thing demanded in the first suit. If it were otherwise, actions involving the same subject-matter between the same parties relating only to questions of fact might be brought and tried over and over again to the harassment, expense, and disadvantage of the
 
 *134
 
 litigant who was successful in the first instance.”
 

 Further, in the course of the opinion in the Carpenter case, the following appropriate quotation from Carpentier et du Saint, vol. 2, page 92, is given:
 

 “ ‘It should be laid down in principle that if a right has been affirmed or denied in a suit, there would be the necessary identity of object, if in a new suit there is put into question the same right, even though the dispute be as to a consequence which has not been passed upon in the original suit.’ ”
 

 The particular monthly installments, attorney’s fees and penalties demanded in this suit were not passed on in the Federal Court action, it is true; but they are only a consequence of the right of the insured -to recover at all under the policies for his alleged continuing disability, and that right, which was disputed by defendant, has previously been adjudicated on and determined.
 

 If the Federal Court judgment had rejected plaintiff’s main demand for monthly benefits instead of sustaining it, the judgment, obviously, would have foreclosed plaintiff’s right to recover the monthly payments claimed in this suit; for, according to the allegations of the petition, they are asserted for the same continuing disability, arise out of the same refusal to pay, and are founded on the provisions of the same three policies. That being true, necessarily no recovery for attorney’s fees and penalties could be had here either; they are only incidental to and dependent on the main demand and fall with it. All of which argues favorably for the proposition that the two suits contain an identity of object.
 

 Our conclusion is, therefore, that there is present here an identity of the thing demanded, and that res judicata, within the intendment and contemplation of Civil Code, Article 2286, bars plaintiff’s claim for statutory penalties and attorney’s fees.
 

 Near the close of their brief, plaintiff’s counsel state:
 

 “Undoubtedly, the insurer had the right to take the appeal which it took in the Federal Court Suit and to hope that this appeal would eventuate in a favorable result. However, the recent decisions of this Court in Campasi v. Mutual Benefit Health & Accident Ass’n. [207 La. 758, 22 So.2d 55] and Bankson v. Mutual Benefit Health & Accident Ass’n [208 La. 1008, 24 So.2d 59], cited and quoted, supra, show that the right of the insurer to litigate and the hope of the insurer that litigation would produce favorable results to it, do not protect against the risk of liability for statutory penalties and attorney’s fees — do not entitle it to conduct such litigation in effect ‘at the expense of the assured’, as this Court has expressed it, — unless it acts ‘upon just and reasonable grounds’. Under this decision, more than the mere privilege of a litigant to pursue his legal remedies to the bitter end, and to press to final judicial determina
 
 *135
 
 tion any contention which he may desire to present, must be shown in order to relieve the ultimately unsuccessful insurer litigant of liability for statutory penalties and attorney’s fees. (Brackets ours)
 

 A casual reading of the cited cases discloses that they are not opposite here. Each concerned, in a single suit, only the primary liability of the insurance company and its responsibility for an unreasonable delay in paying the claim. Neither involved, as does the present action, the right of the insurer to withhold payment pending a determination, on a suspensive appeal in another action, of its obligation under the contract of insurance.
 

 To sustain the position and theory of plaintiff in this case is to render ineffectual defendant’s suspensive appeal in the Federal Court, thereby destroying the status quo of the suit. State ex rel. Kennington v. Red River Parish School Board, 196 La. 291, 199 So. 123. Too, such a holding would lead to continuous litigation and to hardships pending the outcome of an action to determine the insurer’s primary liability for a continuing disability under policies stipulating monthly benefits. Thus, during the pendency of the action on a suspensive appeal, the insured could institute suit after suit on the monthly installments as they accrue (just as has been done under the instant policies, for three different suits have been filed) in which event the company must either settle each judicial demand as it is made or be cast for penalties and attorney’s fees on all if and when it is held primarily liable. Should payments be- made as the new suits are filed, the insurer runs the risk of recovering the funds so paid in the event final judgment in the original action be favorable to it.
 

 But even if defendant’s plea of res judicata were without merit, plaintiff, for another reason, is not entitled to recover the statutory penalties and attorney’s fees demanded in this action. The record does not show that defendant’s delay in paying the four monthly installments involved here (May 1, 1945 to August 1, 1945, both dates inclusive) was without just and reasonable grounds such as to put a reasonable and prudent business man on his guard.
 

 This case, as before shown, was tried almost wholly on the evidence adduced at the Federal Court hearing. From that evidence the Federal Court jury found that the defendant was not unreasonable in delaying payment of, and conducting litigation with respect to, the insurance benefits; and that finding, with which we are in accord, was not disturbed on appeal. Moreover, as heretofore pointed out, one of the members of the Federal Circuit Court of Appeals was inclined to the belief that defendant should not even be required to pay the monthly benefits.
 

 The only additional evidence contained in this record is the testimony, given by depositions, of two physicians (equally prominent), one of whom was offered by
 
 *136
 
 plaintiff and the other by defendant. Plaintiff’s expert testified that his evaluation of the insured’s health was essentially the same as at the time he appeared as a witness in the Federal Court trial. He opined, just as he had previously, that the insured was not able to undertake full time working activities, keeping regular hours on every business day. However, when asked: “During that period [1938 to 1945] there has been no change whatever towards his getting worse?”, he replied: “I think that Mr. Picard has actually improved over that period of time in his physical status”'.
 

 Defendant’s expert, on the other hand, examined the insured on November 16, 1945 (after the filing of this suit), and it was his opinion (based on that examination, on electrocardiograms made by him and by others, and on an x-ray), that Mr. Picard could engage in a sedentary occupation. To the question: “Would you advise him to do a full day’s work every day?”, he replied: “Yes, I believe he could do a full day’s work every day, provided you mean the usual eight hours of sedentary occupation.” In explaining what is meant by a sedentary occupation he said it included “activities involved in working at an office, or in an office, moving about to and from the office, moving about without hurry to other business contacts, and no activities requiring heavy lifting or pulling or what would ordinarily be called manual labor. * * * A sedentary occupation usually means that the greater part of the time the man is seated, though he is allowed to walk about and drive his automobile and walk to and from his business.”
 

 Further, defendant’s expert was questioned, and he answered, as follows:
 

 “Q. Would you say nervous strain and worry in business would he harmless to Mr. Picard in the condition you found him? A. I wouldn’t be able to say definitely whether nervous strain or worry would or would not cause an elevation of Mr. Picard’s blood pressure.
 

 “Q. Well, getting away from blood pressure, Doctor, and taking his condition generally as you found it, would you say it would be a good idea for him to engage actively in full-time business work, even of a sedentary .nature, that would involve a good deal of nervous strain and worry as to the details of the business and possible arguments with persons with whom he came in contact in a business way? A. Yes; if Mr. Picard were my patient, I would be perfectly willing to allow him to enter into such activity, because I believe that in this type of case very often a certain amount of activity, as I have indicated, causes the individual to be under less emotional stress and strain than if he has nothing at all to do and only himself to think about.”
 

 Clearly the testimony of these two experts does not overcome the conclusion drawn from the evidence adduced in the Federal Court case (on which this action
 
 *137
 
 is primarily predicated) that defendant was not without just and reasonable grounds for delaying payment of the monthly disability benefits.
 

 For the reasons assigned (the original decree of this court having been vacated by the granting of the rehearing) it is ordered that the judgment of the district court be reversed, annulled and set aside in so far as it awarded to plaintiff statutory penalties and attorney’s fees totaling $990, together with legal interest thereon, and the demand with reference to those items is now rejected. In all other respects the judgment is affirmed. The right to apply for a rehearing is reserved to plaintiff. The costs of this appeal shall be paid by plaintiff.
 

 O’Niell, C. J., concurs in the decree but not in the opinion that the plea of res judicata is well founded.
 

 BOND, J., concurs in the decree.